**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



**VIR2US, INC.,**

**Plaintiff,**

v.                                                                 Civil Action No. 2:19cv18

**SOPHOS INC., et al.,**

**Defendants.**

## OPINION & ORDER

These matters are before the Court on defendants Sophos Inc. ("Sophos") and Invincea, Inc.'s

("Invincea" together with Sophos, "Defendants")[1] Motion to Stay Disputed Royalty Payments

During Appeal ("Motion to Stay"), Doc. 341, plaintiff Vir2us's ("Plaintiff" or "Vir2us") Motion to

Enforce the Court's March 31, 2020 Order ("Motion to Enforce"), Doc. 347, and Plaintiff's Motion

for Entry of Proposed Form of Judgment ("Motion for Entry of Proposed Judgment"), Doc. 407 (all

together the "Motions"). The parties' Motions were fully briefed and following oral argument of

counsel, the Court from the bench **GRANTED** Plaintiff's Motion to Enforce and Plaintiff's Motion

for Entry of Proposed Judgment. Doc. 447. The Court also **GRANTED** Defendants' Motion to Stay

with the assurance that Defendants will increase the supersedeas bond amount in accordance with

the final judgment outlined below. Id. This opinion memorializes the Court's reasons for these

decisions.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

On January 9, 2019, Plaintiff commenced this action by filing a complaint which asserted

---

[1] As noted below, Plaintiff commenced this action against the following four defendants: defendant Sophos, defendant Sophos Limited, defendant Sophos Group PLC, and defendant Invincea. Doc. 1. However, pursuant to the Court's August 24, 2019 Order dismissed defendant Sophos Limited and defendant Sophos Group PLC. For ease of reference, the Court will refer to Invincea and Sophos as Defendants from the outset of this Opinion & Order.

1

two breach of contract claims against defendants Sophos, Sophos Limited ("Sophos Ltd."), Sophos Group PLC ("Sophos Group"), and Invincea ("Complaint"). Doc. 1. On March 15, 2019, defendants Sophos, Sophos Ltd., Sophos Group, and Invincea filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) ("Motion to Dismiss") as well as a memorandum in support of their Motion to Dismiss. Docs. 34–35, 39. The matter was fully briefed on April 4, 2019. Docs. 46, 48. On August 13, 2019, Defendants Sophos, Sophos Ltd., Sophos Group, and Invincea filed an answer to Plaintiff's Complaint as well as a counterclaim ("Answer and Counterclaim"). Doc. 78. On August 24, 2019, the Court granted the Defendants' Motion to Dismiss, in part with leave to amend, dismissing the defendant Sophos Limited and defendant Sophos Group from the action. Doc. 84. On September 3, 2019, Plaintiff filed a motion to dismiss Invincea's counterclaim for failure to state a claim under Rule 12(b)(6) ("Plaintiff's Motion to Dismiss") as well as a memorandum in support of its Motion to Dismiss. Docs. 90–91, 93. On September 25, 2019, after the matter was fully briefed (Docs. 130, 138–39), the Court held a hearing on Plaintiff's Motion to Dismiss and at the conclusion of the hearing, the Court ruled from the bench and denied Plaintiff's Motion to Dismiss ("Plaintiff's Motion to Dismiss hearing"). Doc. 140. On October 18, 2019, the Court issued a written Order expanding on its rulings from the bench during the Motion to Dismiss hearing and denying Plaintiff's Motion to Dismiss.[2] Doc. 164.

On November 6, 2019, Plaintiff filed a motion for summary judgment ("Plaintiff's Motion for Summary Judgment") as well as a memorandum in support of its Motion for Summary Judgment. Docs. 172–74, 178, 184. That same day, Defendants filed a motion for summary judgment ("Defendants' Motion for Summary Judgment") as well as a memorandum in support of their Motion for Summary Judgment. Docs. 175–76, 179, 185–86. Both parties Motions for Summary Judgment

---

[2] The Court's October 18, 2019 Order also granted the parties' seven (7) motions to seal (Docs. 76, 86, 97, 104, 114, 120, 132). Doc. 164

were fully briefed (Docs. 248–49, 255–56, 262–63, and 271–72) and argued before this Court on December 10, 2019. Doc. 321. On March 31, 2020, the Court by written Opinion and Order granted Plaintiff's Motion for Summary Judgment finding that Defendants breached the Patent License Agreement ("PLA") when they failed to report sales and pay royalties on their products that incorporate source code from Invincea X Endpoint - Spearphish Protection which fall under the PLA's definition of Container Products and Services []" ("March 31 Order"). Doc. 335 at 14. As a result, the Court ordered Defendants to "pay Plaintiff all royalties due under" the PLA, and ordered Defendants to file with the Court "delinquent quarterly reports consistent with the rulings in this Order within thirty (30) days" if the parties could not reach a stipulation on the amount of damages owed to Plaintiff. Id. at 14, 17.

In accordance with the directives of the Court's March 31 Order, the parties began to negotiate a stipulated amount of damages owed to Plaintiff. Based on the parties' representations to the Court, in late April 2020 it became clear to the parties that they could not agree on the stipulated amount and on April 30, 2020, Defendants filed their delinquent quarterly reports purportedly in accordance with the Court's Order. Doc. 340. However, Plaintiff alleges and the Court agrees that Defendants did not list all "Sales" of Container Products and Services as defined by the PLA and attempted to exclude the total amount of sales of Intercept X made through Sophos' Managed Service Provider program ("MSP Program").[3] Doc. 350 at 5. The parties represented to the Court

---

[3] As s discussed in more detail below:

"MSPs are third-party channel partners that provide bundled security software solutions to small businesses. Declaration of Scott Barlow in Support of Defendants' Opposition To Plaintiff's Motion To Enforce (hereinafter "Sophos Decl.") ¶ 3. Through the program, MSPs have two options for selling Sophos's security products, including Intercept X [a Container Product]. Id. ¶ 3. They can either sell traditional termed software licenses that provide one, two, or three year subscriptions, or they can make Intercept X available to end users on an open-ended basis and bill their customers monthly based on the customers' actual use of Sophos products. The monthly-billing model is akin to a cellphone or utility bill. Internally, Sophos does not track monthly MSP users based on any software license sold by Sophos. Instead, the MSP owns a software license that lasts as long as the MSP is an authorized Sophos MSP. Id. ¶ 4. The MSP is free to deploy its license as it sees fit. Id. ¶ 4. Sophos receives a

that they tried to meet and confer to resolve Defendants' non-compliance but were unsuccessful. This alleged underreporting did not arise until after the Court entered its March 31 Order and is the basis of Plaintiff's Motion to Enforce and Motion for Entry of Proposed Judgment.

On May 1, 2020, Defendants filed the instant Motion to Stay requesting the Court stay their royalty payment obligations pending appeal.  Docs. 341–42. In said Motion to Stay, Defendants assert that consistent with the Federal Rules they will post a bond in the full amount of the Court's final judgment, that specifies a royalty amount due and prejudgment interest.  Doc. 342 at 1.  Two weeks later, on May 15, 2020, Plaintiff filed the instant Motion to Enforce.  Doc. 347.  In such Motion to Enforce, Plaintiff asserts Defendants have failed to comply with the Court's March 31 Order and should be required to file amended quarterly reports that include all "Sales" of all "Container Products and Services" as defined by the PLA and be required to certify that the amended quarterly reports are accurate and complete.  Doc. 350 at 11. More specifically, Plaintiff alleges that Defendants quarterly reports fail to identify all sales of the MSP program which includes when the "new unique end-user" purchases an initial license, and each time a "new unique end-user" pays a monthly fee based on usage of that license. Id. at 6, 7–8. Both Defendants' Motion to Stay and Plaintiff's Motion to Enforce were fully briefed by June 3, 2020 (Docs. 352, 353, 360, 370, 376) just two days after Defendants filed a notice of intent to post bond in the amount of $6,558,334.00 plus

---

telemetry report at the end of each month identifying the number of users that received a deployment of Sophos's products and bills each MSP for the number of users that received a deployment through that MSP's license."

Doc. 360 at 3–4. Defendants argue that the revised delinquent quarterly reports included both the total number of term licenses and the total deployments of Intercept X, a Container Product and Service as defined under the PLA, to a new unique end-user through the MSP program's license. Id. at 1, 6.  Plaintiff rejects Defendants argument that the MSP program billing model is similar to financing an automobile and that each monthly payment for usage of Intercept X through the MSP program is a sale under the PLA which requires Defendant to pay them one dollar ($1) for each monthly core payment fee that a user paid. Doc. 396 at 12:1–25; 13:1–6; Doc. 350 at 6. The Court agrees with Plaintiff.  See infra Section II(B).

prejudgment interest in accordance with their Motion to Stay (Doc. 363).

On June 5, 2020, this Court scheduled a hearing on Plaintiff's Motion to Enforce for July 1, 2020 ("July 1 hearing"). During the July 1 hearing the Court made the following rulings:

> It's clear that Sophos owes royalties on the MSP program products. Royalties are based on the products. Coming up with some fancy name such as unique end users, which doesn't appear anywhere in the Agreement, doesn't change that. I suppose you could switch people over to calling them unique end users in an effort to get out of paying the royalties. That appears to me what's happened here. So the defendant will have to furnish the requested information as to the MSP programs within 10 days, and they will continue to be reported quarterly. All further quarterly reports will be signed under penalty of perjury by Mr. Barlow as long as he retains his permanent position. All right, when the Court receives the information on the MSP programs, in five days you can submit proposal and counter proposal as to the final number which will be payable at this time.

Doc. 396 at 25:13–25; 26:1–4. It is important to note, that these rulings granted the very relief that Plaintiff sought in its Motion to Enforce, therefore resolving said motion. The Court and the parties during the July 1 hearing also briefly discussed Defendants' Motion to Stay and the Court ordered Defendants to increase the bond amount to $ 8 million. Id. at 28:11. Moreover, during the July 1 hearing, the Court concluded that Defendants were required to pay Plaintiff a one dollar ($1) royalty for each monthly payment of the MSP program. Id. at 25:13–20; 26:5–16.

On July 10, 2020, in response to the Court's rulings during the July 1 hearing, Defendants filed the requested information as to the MSP program along with declarations from the Vice President of MSP at Sophos Mr. Scott Barlow and the Global Head of Intellectual Property at Sophos Mr. Ira Heffan—both of which were signed under penalty of perjury. (Docs. 394, 394-1, 394-2; Docs. 395, 395-1, 395-2). On July 14, 2020, Defendants posted a supersedeas bond for $6,55,334.00. Doc. 397. In accordance with the Court's directives at the July 1 hearing, the parties met and conferred to try to resolve any issues concerning the amount of damages. The parties were again unsuccessful and on July 15, 2020, Defendants filed a submission concerning quantification of final judgment ("Submission Concerning Quantification of Final Judgment"). Doc. 402. That same day,

Plaintiff also filed the third pending motion before this Court, its Motion for Entry of Proposed Judgment. Docs. 407, 410. Plaintiff's Motion for Entry of Proposed Judgment was fully briefed July 28, 2020. Docs. 416, 423.

On October 26, 2020, both Plaintiff and Defendants filed status reports with the Court. Docs. 432, 439, 440. Defendants' status report identified two issues pending before the Court—(1) "whether Sophos should pay $1 per month that someone uses Sophos's products through the MSP program (as Vir2us contends) or whether Sophos should pay $1 per sale of the software (as Sophos contends)"; and (2) "whether post-judgment interest should be calculated based on the 1-year constant maturity Treasury yield (as Sophos contends) or at a higher rate, even though the contract does not have any provision governing post-judgment interest (as Vir2us contends)." Doc. 432 at 2–3. Plaintiff's status report, on the other hand, argues that the Court, during the July 1 hearing, ruled in favor of Plaintiff on the royalty payments for the MSP program. Doc. 439 at 3. Based on this belief Plaintiff also provided the Court with an updated proposed form of judgment that included an updated amount of $17,595,615.88 in total damages is owed to Plaintiff as of October 15, 2020. Docs. 439, 440.

On March 30, 2021, the Court heard oral argument on the parties' Motions ("March 30 hearing"). Doc. 447. At the conclusion of the March 30 hearing, the Court ruled that in accordance with its findings during the July 1 hearing, Defendants must pay Plaintiff royalties on the monthly payments received from the users of the MSP program as well as when the "new unique end-user" purchases an initial license. During the March 30 hearing, the parties also provided the Court via e-mail updated schedules for their respective claims as to the total amount of damages owed to Plaintiff. The parties' schedules are attached as Exhibits A and B to the March 30 hearing minutes. See March 30 hearing, Plaintiff's Revised Schedule, Exhibit A, Doc. 447-1 and Defendants' Revised Schedule, Exhibit B, Doc. 447-2. The Court **GRANTED** both of the Plaintiff's Motions—the

6

Motion to Enforce and the Motion for Entry of Proposed Judgment. Doc. 447. The Court also **GRANTED** Defendants' Motion to Stay based on Defendants' assurance that they will increase the amount of the supersedeas bond as agreed. Id. The reasons that follow, explain the Court's Rulings.

## II.    DISCUSSION

The Court will address each of the pending Motions in the following order: Plaintiff's Motion to Enforce, Plaintiff's Motion for Entry of Proposed Judgment, and Defendant's Motion to Stay.

### A.    PLAINTIFF'S MOTION TO ENFORCE

Plaintiff in its Motion to Enforce argues that Defendants have failed to comply with the Court's March 31 Order because the quarterly reports Defendants were ordered to file did not include all "Sales" of the Container Products and Services but only included "new unique end users." Doc. 350 at 1. In fact, Plaintiff contends the quarterly reports omitted large amounts of users that were made through the MSP program. Id. at 1, 7. Plaintiff further asserts that the Defendants have purposely excluded their sales figures in both discovery responses and sworn deposition testimony in an effort to avoid paying royalties on the MSP program. Id. at 4–5. As a result of Defendants failure to comply with the March 31 Order, Plaintiff asks the Court to require Defendants to file amended quarterly reports that include all sales of all "Container Products and Services" and be required to certify that the amended quarterly reports are accurate and complete. Id. at 11.

Defendants refute Plaintiff's claims and argue that Plaintiff is attempting to manufacture a new dispute over the meaning of "Sale" as applied to Defendant Sophos's MSP program. Doc. 360 at 3. Defendants argue that quarterly reports contained both termed licenses—where a Container Product is licensed for a defined time period (e.g., sixty dollars ($60) for one year)—and sales through Sophos's MSP program. The MSP program allows users to license the Container Products for an unlimited period as a monthly subscription for a fee as low as thirty-five cents ($0.35). Id. Defendants argue that Plaintiff's position treats each monthly fee as a renewal which would require

7

them to pay a one dollar ($1) for each monthly fee that a user paid. But Defendants argue there is no renewal. Id. at 11. Defendants also argue that they disclosed all MSP Program users during discovery and in April 30 Quarterly Reports and suggest that Plaintiff failed to inquire about the MSP program. Id. at 3. In fact, Defendants respond that they "offered to provide more information to [Plaintiff] concerning the MSP program early in fact discovery, but [Plaintiff] never pursued the issue." Doc. 360 at 11.

As noted supra and on the record during the March 30 hearing, the Court previously resolved Plaintiff's Motion to Enforce during the July 1 hearing. In fact, during the July 1 hearing, the Court ruled from the bench and ordered that (1) Defendants must pay royalties on each monthly payment for the MSP program and (2) Defendants must comply with its March 31 Order and "furnish the requested information as to the MSP programs within 10 days, and [must] continue to [] report [said information about the MSP programs] quarterly. All further quarterly reports will be signed under penalty of perjury by Mr. Barlow as long as he retains his permanent position." Doc. 396 at 25:21–25. These bench rulings granted Plaintiff the exact relief it sought in its Motion to Enforce—that Defendants should be ordered to file amended quarterly reports that list all sales including the MSP program and the Court should further order Defendants to certify that the amended quarterly reports are complete and accurate—thus resolving Plaintiff's Motion. As a result, the Court need not rehash Plaintiff's Motion to Enforce. To the extent there are any remaining questions as to the Court's ruling on Plaintiff's Motion to Enforce, the Court hereby **GRANTS** Plaintiff's Motion to Enforce and **ORDERS** Defendant to furnish quarterly reports that list all sales including the MSP program's monthly payments and that Defendants must certify under penalty of perjury that the quarterly reports are complete and accurate.

### B.   MOTION FOR ENTRY OF PROPOSED JUDGMENT

The Court next reviews Plaintiff's Motion for Entry of Proposed Judgment because such ruling will impact the Court's findings with regard to Defendants' pending Motion to Stay.   As discussed above, the parties filed competing motions for entry of final judgment on July 15, 2020. Docs. 402; 407. Based on the parties' filings there are two disputes pending before this Court.  First, whether Defendants are required to pay the one dollar ($1) royalty for all sales of the MSP program which includes when the "new unique end-user" purchases an initial license, and each time a monthly fee is paid based on usage of the technology in that license. The second issue is whether post-judgment interest should be calculated based on statutory rate enumerated in 28 U.S.C. § 1961(a) or at the enumerated rate of ten percent (10%) in the PLA. For the reasons discussed during the July 1 hearing, the March 30 hearing and herein, the Court finds that (1) Defendants must pay monthly royalties on the monthly technology provided pursuant to the MSP program and (2) that post-judgment interest should be calculated at the statutory rate enumerated in 28 U.S.C. § 1961(a).

### 1.   Plaintiff is Entitled to Monthly Royalties on Defendants' MSP Program

In its Motion for Entry of Proposed Judgment Plaintiff argues that it is entitled to royalties on sales of all Container Products and Services as defined under the PLA. Doc. 410 at 3–4.  Such royalties, Plaintiff argues, include the recently discovered sales for Sophos' MSP program. More specifically, Plaintiff argues that Sophos' MSP program is not a license in perpetuity as Defendants previously argued to the Court but rather a limited term license having a duration of each month as well as an initial licensing fee.  Plaintiff argues that under the PLA royalties are owed on both the initial licensing fee and the subsequent monthly payments due when and if the technology is utilized. Id. at 4.  Plaintiff further asserts in its Motion for Entry of Proposed Judgment that the Court during the July 1 hearing found Plaintiff's interpretation to be correct and that Defendants are in fact required to pay a one dollar ($1) royalty on the monthly payments Sophos receives from the users

9

of the MSP program as well as when the "new unique end-user" purchases an initial license through Sophos' MSP program. Id. at 7.

Based on this belief, Plaintiff asserts that Defendants initially owed Plaintiff $14,626,383.41 in total damages. Id. at 6. It is important to note, however, that Plaintiff has updated this total damage amount on two separate occasions since the filing of its Motion for Entry of Proposed Judgment. In fact, on October 26, 2020, Plaintiff provided the Court with an updated proposed form of judgment that included an updated amount of $17,595,615.88 in total damages which is owed to Plaintiff as of October 15, 2020. Docs. 439, 440. And during the March 30 hearing, Plaintiff provided the Court via e-mail with an updated schedule for the total amount of damages owed to Plaintiff including pre-judgment interest at ten percent (10%) which as of February 15, 2021 was $24,648,860.51. See March 30 hearing, Plaintiff's Revised Schedule, Exhibit A, Doc. 447-1.

Defendants in their Submission Concerning Quantification of Final Judgment[4] disagree with Plaintiff's total amount of damages and what royalties are owed on the MSP program. Doc. 402 at 2. Defendants reassert that they should only have to pay a one dollar ($1) royalty per sale of the MSP program, not a one dollar ($1) royalty per month for persons accessing defendant Sophos' products through the MSP program. Defendants argue that Plaintiff's interpretation that the monthly MSP payments are renewals is not dictated by the PLA and Virginia law does not countenance. Id. Defendants also argue Plaintiff's interpretation of the royalties is not commercially reasonable because it could exceed the amount Sophos is being paid by the customers. Defendants also argue that the PLA is completely silent on the MSP program and any argument by Plaintiff that the express language of the PLA dictates how royalties should be charged for the MSP program is therefore false and the Court should reject it. Id. at 9. In fact, Defendants state that if the Court applies the general

---

[4] Defendants also filed their Objection and Response to Plaintiff's Motion to Enter Judgment. Doc. 416. The only objection in this filing is to the post-judgment interest rate and that is discussed infra.

provisions of the PLA to the MSP program the only "sale" takes places when the end user first receives access to the software through the MSP provider, which is the actual licensed entity, in perpetuity. Id. Defendants disagree with Plaintiff and argue that the Court did not make a ruling on Defendants' royalty payments for the MSP program. Id.

During the March 30 hearing, Defendants also provided the Court via e-mail with an updated schedule for the total amount of damages owed to Plaintiff which as of February 15, 2021 was $10,540,829 not including pre-judgment interest. See March 30 hearing, Defendants' Revised Schedule, Exhibit B, Doc. 447-2.

The Court agrees with Plaintiff that Defendants are required to pay Plaintiff a one dollar ($1) royalty for each monthly payment Sophos receives from the end-users of the technology in the MSP program as well as when the "new unique end-user" purchases an initial license through Sophos' MSP program. The Court reaches such conclusion in accordance with its findings during both the July 1 2020 hearing and March 30 2021 hearing as well as in the March 31 2020 Order where this Court held that the PLA is clear and unambiguous and therefore the Court is required to "afford those terms their plain and ordinary meaning." Doc. 335 at 8 (quoting Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000)). As a result, the Court reads that the PLA, which Sophos inherited, simply applies a one dollar ($1) royalty payment for each "sale" of a Container Product or Service. A "sale" is defined under the PLA as "any sale, re-sale, rental, lease, license, transfer or other form of distribution or provision of a Container Product or Service by Invincea or its Affiliates in the United States or for use in the United States. . ." Doc. 6-1 at 4. Each renewal or extension of a term license are defined as separate "sales" under the PLA. Id. at §3.1.2.

Applying the PLA's definition of a sale to Defendant Sophos' MSP program, the Court finds that such program is not a perpetual license, rather at its core, the MSP program is a month-to-month pay-as-you-go program and each monthly payment is in essence a renewal under the PLA. Because

a renewal is considered a sale under the PLA, Defendants must pay a royalty on each monthly fee received from the end users of the MSP program. These monthly royalties may threaten the economic viability of the MSP program, however, the Court cannot adjust the terms of the PLA. The parties are bound by the terms of the PLA no matter how unfavorable they may be. See PBM Nutritionals, LLC v. Lexington Ins. Co., 724 S.E.2d 707, 714 (Va. 2012) ("This Court 'will not insert by construction, for the benefit of a party, a term not express in the contract.'") (quoting Lansdowne Dev. Co., L.L.C. v. Xerox Realty Corp., 514 S.E.2d 157, 161 (Va. 1999). As a result, the Court finds that Plaintiff is entitled to a one dollar ($1) royalty for each monthly payment Sophos receives from the end-users of the MSP program as well as when the "new unique end-user" purchases an initial license through Sophos' MSP program.

### 2. Post-Judgment Interest

The Court next turns to what interest rate applies to post-judgment interest—the federal statutory interest rate set forth in 28 U.S.C. § 1961 or the contractual interest rate of ten percent (10%) per annum enumerated in the PLA. Defendants have conceded that the ten percent (10%) rate applies to prejudgment interest in the manner described in the PLA. Plaintiff argues that the PLA "unequivocally specifies" the post-judgment interest rate at a "statutory rate of ten percent per annum or the highest rate permitted under applicable law, whichever is lower." Doc. 423 at 1, 5. Plaintiff also argues that 28 U.S.C. § 1961(a) and the post-judgment interest rate enumerated therein is not applicable because the judgment to be entered in this case is a not a money judgment. Id. at 4–6. Defendants disagree and assert that the standard rate for post-judgment interest enumerated in 28 U.S.C. § 1961(a) of "the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[]" applies. Doc. 416 at 1. Defendants argue that the PLA is silent on a post-judgment interest and Section 4.3.3 which Plaintiff relies on is "general language does not amount to an 'express intent to

12

agree on a post-judgment interest rate.'" Id. at 2 (citing Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc., 501 F. App'x 247, 254 (4th Cir. 2012)).

"Although parties may contractually agree to a different post-judgment rate, it is well settled that any agreement as to post-judgment interest must be expressed in 'clear, unambiguous and unequivocal language.'" Haas v. Falmouth Fin., LLC, No. 1:10CV565, 2011 WL 13238417, at *4 (E.D. Va. June 13, 2011) (citing Braunstein v. Pickens, 2011 U.S. Dist. LEXIS 52988, at *5–6 (D.S.C. May 12, 2011)). The Fourth Circuit has previously held that a parties' "lease agreement which stated that '[a]ny payment not promptly made by [defendant] to [plaintiff] shall bear interest from the date due at two percentage (2%) points per annum above the prevailing prime interest rate[,]'. . . [was not an] "express agreement to overcome [. . .] § 1961(a).'" U.S. Home Corp. v. Settlers Crossing, LLC, No. CIV.A. DKC 08-1863, 2015 WL 3973071, at *4 (D. Md. June 29, 2015) (quoting Kanawha-Gauley Coal & Coke Co. v. Pittston Mins. Grp., Inc., 501 F. App'x 247, 254–55 (4th Cir. 2012)).

The Court has reviewed the PLA and agrees with Defendants that the language in Section 4.3.3 of the PLA is too general to show agreement as to post-judgment interest. The language in Section 4.3.3 of the PLA simply states "[a]ny fees or payments that are made hereunder later than the date on which they are due shall bear interest, compounded monthly at the statutory rate of ten percent per annum or the highest rate permitted under applicable law, whichever is lower." Doc. 6-1 at 5. There is no evidence of a "clear, unambiguous and unequivocal" agreement that an interest rate of ten percent (10%) applies to post-judgment interest. Rather Section 4.3.3 of the PLA simply states an ambiguous interest rate for late payments. See contra Chesapeake Fifth Ave. Partners, LLC v. Somerset Walnut Hill, LLC, No. CIV.A.3:08CV764, 2009 WL 1298217, at *3 (E.D. Va. May 8, 2009) (finding that pre-judgment and post-judgment interest rates were based on the contract which expressly stated that "[i]f judgment is entered against [Somerset] on this Note, the amount of the

13

judgment so entered shall bear interest at the Default Rate as of the date of entry of the judgment, subject to any usury or other laws restricting such rate."). As a result, the Court finds that the statutory post-judgment interest rate enumerated in 28 U.S.C. § 1961 governs post-judgment interest in this action.

Considering these findings, the Court **GRANTS** Plaintiff's Motion for Entry of Proposed Judgment and enters the final judgment as described infra Section III.

### C.   DEFENDANT'S MOTION TO STAY

The Court turns to Defendants' Motion to Stay. Doc. 341. In such Motion, Defendants request that the Court stay their royalty payment obligations pending appeal. Id. at 1. In support of this requested stay, Defendants assert that consistent with the Federal Rules they will post a bond in the full amount of the Court's final judgment. Doc. 342 at 1. Plaintiff states that it "does not, in principle, oppose" Defendants' Motion to Stay but rather argues that the Defendants have seriously underreported the number of "Container Products and Services" sold to date in violation of this Court's March 31 Order. Doc. 352 at 1. As a result of this alleged underreporting, Plaintiff requests that if Defendants produce the following information and certify it is correct, Plaintiff will not oppose Defendants' Motion to Stay: "(1) post a bond in the full amount of the Court's final judgment, including applicable prejudgment interest, and (2) increase the bond amount to cover future royalty payments owed under the Patent License Agreement." Id. at 2.

"At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). "Although the Fourth Circuit has not addressed the issue directly, lower courts in this circuit and other circuit courts generally presume a supersedeas bond must be in an amount that fully secures the debt owed by defendant to plaintiff as a result of the court's judgment." Ward v. AutoZoners, LLC, No. 7:15-CV-

164-FL, 2019 WL 7598817, at *1 (E.D.N.C. Feb. 11, 2019) (collecting cases on this presumption).

"'The stay is effective when the supersedeas bond is approved by the court.' When a supersedeas bond is posted, the party seeking the stay is entitled to the stay as a matter of right." Kirby v. Gen. Elec. Co., 210 F.R.D. 180, 194 (W.D.N.C. 2000), aff'd, 20 F. App'x 167 (4th Cir. 2001), and aff'd, 20 F. App'x 167 (4th Cir. 2001) (citing Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc., 190 F.R.D. 190, 192 (E.D.Va. 1999)).

In the instant case, Defendants, during the March 30 hearing, agreed to increase the amount of the supersedeas bond to twenty-five million dollars ($25,000,000) which is sufficient to cover Plaintiff's total damages including pre-judgment interest as of February 15, 2021. As a result, Plaintiff during the March 30 hearing stated that it has no objections to Defendants' Motion to Stay. Because Defendants agreed to increase the supersedeas bond to twenty-five million dollars ($25,000,000), the Court finds that Defendants are entitled to a stay as a matter of right. See Ward v. AutoZoners, LLC, No. 7:15-CV-164-FL, 2019 WL 7598817, at *2 (E.D.N.C. Feb. 11, 2019) ("Accordingly, to be entitled to a stay as of right for posting full security, defendant must provide additional security sufficient to also cover plaintiff's interest and costs accrued by the date of the amended judgment."). Therefore, Defendants' Motion to Stay is **GRANTED** based on the assurances provided to the Court during the March 30 hearing—namely, that Defendants will increase the supersedeas bond amount to twenty-five million dollars ($25,000,000) and continue to increase the bond quarterly in accordance with the ongoing royalty payments in the PLA.

### III.   CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Enforce (Doc. 347) is **GRANTED**; Plaintiff's Motion for Entry of Proposed Judgment (Doc. 407) is **GRANTED**; and Defendants' Motion to Stay (Doc. 341) is **GRANTED** with the assurance that Defendants will increase the

supersedeas bond amount in accordance with the terms of the final judgment entered by this Court.

In accordance with the Court's rulings from the bench on March 30, 2021, **IT IS HEREBY ORDERED AND ADJUDGED** that:

1. The amount owed under the PLA before interest, through Q4 2020, by Defendants jointly and severally to Plaintiff, less a credit of One Million Twenty Thousand Six Hundred Eighty Three Dollars and Ninety Two Cents ($1,020,683.92) previously paid to Plaintiff by Defendants, is the sum of Twenty Two Million Seven Thousand Six Hundred Twenty Two Dollars and Eight Cents ($22,007,622.08) (See March 30 hearing, Plaintiff's Revised Schedule, Exhibit A, Doc. 447-1.);

2. The amount of interest owed under the PLA, through February 15, 2021, by Defendants jointly and severally to Plaintiff is the sum of Two Million Six Hundred Forty One Thousand Two Hundred Thirty Eight Dollars and Forty Three Cents ($2,641,238.43) with interest at ten percent (10%) continuing to accrue, as set forth in the PLA, until the date of this Order (See March 30 hearing, Plaintiff's Revised Schedule, Exhibit A, Doc. 447-1.);

3. Judgment shall be and hereby is entered in favor of Plaintiff and against Defendants, jointly and severally, in the amount of Twenty Four Million Six Hundred Forty Eight Thousand Eight Hundred Sixty Dollars and Fifty One Cents ($24,648,860.51) plus interest at ten percent (10%) per the PLA from February 15 to March 31, 2021 together with interest on the judgment sum only (not on the interest from February 15, 2021 to March 31, 2021) at the statutory rate defined in 28 U.S.C. § 1961(a) and its costs;

4. Defendants are further ordered to deliver to Plaintiff quarterly reports pursuant to the Patent License Agreement and consistent with the Court's prior Orders, which list all "sales" of all "Container Products and Services" as those terms are defined in the PLA, including monthly

fees under the MSP pogram, and consistent with the Court's prior Orders. Defendants are ordered to deliver a declaration with each quarterly report under penalty of perjury that the quarterly report listing all sales is complete and accurate.

5. Defendants shall post a bond in the amount of Twenty-Five Million Dollars ($25,000,000) and are ordered to increase the amount of the bond by the amount of royalties due per each quarterly report within thirty (30) days after each such report is delivered by Defendants to Plaintiff following entry of this Order. Defendants shall receive a credit against the increase in the bond for each annual payment of Two Hundred Fifty Thousand Dollars ($250,000) tendered to Plaintiff pursuant to the PLA;

6. Defendant Invincea's Counterclaim is denied and dismissed with prejudice; and

7. Plaintiff shall recover its taxable costs allowed by law; pursuant to Local Rule 54, Vir2us shall file a bill of costs for consideration by this Court within fourteen (14) days of the entry of this Order.

An appropriate **JUDGMENT SHALL ISSUE**.

The Clerk is **REQUESTED** to electronically deliver a copy of this Opinion & Order to all counsel of record.

It is **SO ORDERED**.

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

March 3 1, 2021

Norfolk, Virginia